SANBORN *v.* SANBORN & a., *Executors of Heman Sanborn.*

The jury may consider the truthfulness of a party who has testified in his own cause, without limiting the effect given such consideration to the weighing of his testimony.

APPEAL, from the decision of the commissioner, disallowing the testator's promissory note for $1,500, dated March 26, 1868, and payable to the plaintiff on demand, with interest annually. Plea, the general issue, with the statute of limitations; replication, a new promise. Verdict for the defendants. The note was produced by the plaintiff, and upon it are the following endorsements in his handwriting, viz.,—January 26, 1870, $200; March 6, 1877, $100; October 28, 1878, $100; "May 20, 1880, received horse and two cows, price $160; April 6, 1882, received note for $30, and interest $3.60; received, April 6, 1882, one hundred dollars costs in suit *State* v. *Chas. H. Sanborn.*" To show the new promise, the plaintiff relied upon the payments endorsed on the note April 6, 1882. The plaintiff is the only child of Heman Sanborn by his second wife. He introduced evidence of statements made by Heman after the death of his second wife in 1865, to the effect that he had in his hands $1,000 or so which came from his said wife, and which he intended the plaintiff should have at his decease. The plaintiff claimed that the note was given for this money.

The defendants contended that the note was fully settled and paid on or before March 11, 1871; and whether it was, or was not, was one of the two questions submitted to the jury. They also claimed that all the endorsements after that of 1870 were unauthorized, that the last three endorsements were made by the plaintiff at the same time without his father's consent or knowledge, and were fraudulently made for the purpose of renewing the note. Whether Heman paid to or for the plaintiff the money (including the $30 note) endorsed April 6, 1882, to be applied on the note, and directed or authorized the endorsement, was the other question submitted to the jury.

After the jury had been out several hours, they sent a communication to the court asking instructions as to some matters with which they had difficulty. They were called in and instructions given, to which there was no exception. At the conclusion of the instructions the foreman asked, "Are we at liberty to consider the truthfulness of the plaintiff?" The court replied, "You are." The plaintiff then requested the court to instruct the jury that "the veracity of the plaintiff can only be considered upon the consideration of the evidence he gave in the case." The court declined, and the plaintiff excepted.

*Bingham, Mitchell & Fletcher*, for the plaintiff. 1. The evidence given by the plaintiff being immaterial and irrelevant upon

either question submitted to the jury, it was the court's duty to instruct them, in response to their inquiry, that the truthfulness of the plaintiff was not involved in either question submitted, because the testimony he gave was immaterial and not relevant upon either of the questions : his answer to their question should have been in the negative instead of in the affirmative.

2. If the court answered the jury's question in the affirmative, he should have instructed as requested by the plaintiff, because they were not " at liberty to consider the truthfulness of the plaintiff " except as an element in weighing such evidence as the plaintiff gave; and the attention of the jury should have been directed to the nature of that evidence.

A jury trial, when properly conducted, is not only the most satisfactory method of determining ordinary questions of fact, but is the most efficient method.    But a jury, to be an efficient agency in settling parties' rights, must have the efficient coöperation, instruction, and direction of an unbiassed, honest, and intelligent judge, who understands his duty and will perform it.

To license a jury to exercise an arbitrary will instead of requiring them to exercise their judgment upon the evidence submitted to them, is to disregard the safeguards which distinguish a trial from a farce, and a verdict from a tragedy.    It is the court's duty to instruct a jury upon the whole case, and not upon isolated parts.    Thomp. Ch. Jur., s. 71.    He should not charge as to the credibility of a particular witness.    *Ib.*, s. 36.    In this case the court should not have singled out the plaintiff, nor permitted the jury to single him out, and apply a different rule to him and his testimony from that applicable to other witnesses.    The instruction given had a tendency to mislead the jury into the belief that their privilege, with reference to the plaintiff and his testimony, was exceptional,—that the same right did not exist in weighing other witnesses' evidence. Instructions which are misleading should be modified, explained, or refused.    *Snydacker* v. *Brosse*, 51 Ill. 357;  *S. C.*, 99 Am. Dec. 551, 555.    A charge or instruction may be correct as far as it goes, and be misleading because it fails to go far enough fully and intelligently to explain its meaning.    Thomp. Ch. Jur., s. 67;  Prof. Jur., s. 323.    In *Lavenburg* v. *Harper*, 27 Miss. 299, it was held 'that an instruction which says, " If the jury believe that any of the witnesses corruptly swear falsely, they have the right to disregard his evidence entirely," there being an attempt to discredit one of the witnesses, was too broad, because it did not confine the jury to the testimony adduced on the trial, nor to the manner and demeanor of the witness while testifying, nor to any circumstance apparent upon the examination.

Counsel also cited and commented on *Rollings* v. *Cate*, 1 Hiesk. 97;  *Wilcox* v. *State*, 3 Hiesk. 110;  *Hall* v. *Weare*, 92 U. S. 728.

The plaintiff's request for instruction was specific, and there is no valid excuse for failure to give it.    If there was a failure to

request the instruction, a different question might arise.  *Johnson*
v. *Gallivan*, 52 N. H. 145; *Moses* v. *Railroad*, 32 N. H. 535.
The credibility of a witness is a fact to be judged of like any
other fact in the case.  They must judge of it from evidence in
the case.  They cannot disregard the testimony of a witness with-
out cause; they cannot do it from mere caprice.  *Robertson* v.
*Dodge*, 28 Ill. 161—*S. C.*, 81 Am. Dec. 267.  A jury is not war-
ranted in rejecting evidence as being unworthy of belief on the
ground that the witness has been contradicted, unless he was con-
tradicted upon a material point in his testimony.  *Swan* v. *People*,
98 Ill. 610—cited in note to 81 Am. Dec. 270.  The knowledge of
facts obtained by jurors outside the trial should not be used, nor
permitted to be used, in the jury's consideration of the issues pre-
sented to them.  Before those facts can be considered, the jurors
having knowledge of them should be examined like other wit-
nesses.  *Schmidt* v. *Insurance Co.*, 1 Gray 535; Prof. Jur., *s.* 392.

*Chase & Streeter*, for the defendants.  The fact that the plain-
tiff had suborned a third person to testify falsely in support of
his suit would have been a circumstance competent for the jury to
consider as tending to discredit the plaintiff's case.  *Egan* v. *Bow-
ker*, 5 Allen 449; *Moriarty* v. *Company*, L. R. 5 Q. B. 314; *State*
v. *Staples*, 47 N. H. 113, 114, 119.  Why should not the jury be
allowed to give at least equal consideration to the fact that the
plaintiff testified falsely himself?  The principle in both cases is
identical, viz., that the resort to falsehood in support of a claim
may fairly give rise to the inference that the claim attempted to
be supported by such means is unjust.  It is in the nature of an
implied admission by the party that his case is so bad that it can-
not safely be submitted on truthful evidence, but requires to be
bolstered up by false testimony.  The jury may, if they see fit,
infer that perjury would not be attempted by the plaintiff to sup-
port a good cause of action.  There is no ground on which the
plaintiff's own perjury can be favorably distinguished from his
suborning others to commit perjury.  How is it any worse to
cause a falsehood to be uttered by the mouth of another, than to
utter it by one's own mouth?
  The only exception in this case is based on the refusal of the
court to instruct the jury that "the veracity of the plaintiff can
only be considered upon the consideration of the evidence he gave
in the case."  Plaintiff's counsel, in his brief, explains what he
meant by this request, viz., that the jury were not at liberty to
consider the truthfulness of the plaintiff, "except as an element
in weighing such evidence as the plaintiff gave."  In other words,
the counsel contends that although the jury might be of opinion
that Charles H. Sanborn testified falsely, yet this fact should not
be allowed to have any effect beyond inducing them to discredit
Charles H. Sanborn's own testimony, and could not be considered

as tending to discredit Charles H. Sanborn's entire case. The objection to this requested instruction is, that it assumes to treat Charles H. Sanborn as if he were merely an ordinary witness, whereas, in fact, he was a party as well as a witness. If a mere witness (a third person, who is not a party) testifies falsely, it does not necessarily follow that the party calling him was cognizant of and privy to the falsehood. And if the party was not in any way in complicity with the attempt of the witness to deceive the jury, there is room to argue that the falsity of the witness in any part of his testimony should not be weighed by the jury, except in passing upon the credit to be given to the testimony of that particular witness. But if the false witness is the party himself, the case stands very differently. He cannot be heard to say that he is not responsible as a party for his sins as a witness. The plaintiff, in effect, contends that if one who is both a party and a witness commits perjury, his case, as a whole, cannot suffer thereby any greater damage or prejudice than if the perjury had been committed by an ordinary witness having no interest in the case. On this theory, a plaintiff who testifies falsely has everything to gain and nothing to lose thereby (so far as the verdict is concerned). If the jury believe him, his case profits by the falsehood. If they disbelieve him, his case stands no worse than if he had not testified at all. This is not sound law.

The corrupt acts of the party as a witness have the same effect as his corrupt acts in any other particular respecting the conduct of the case (*e. g.*, attempting to bribe a juror). The party's bad conduct as a witness may be considered by the jury as a circumstance tending to discredit him, not only as a witness, but also as a party. It is a circumstance having some tendency not only to discredit his individual testimony, but also to discredit the entire case set up by him as a party,—not merely to discredit so much of the case as rests on his own testimony, but also so much of his claim as is attempted to be supported by the testimony of others. The giving of false testimony by the plaintiff is a circumstance tending to show that he is conscious of the justice of the defendants' case and distrustful of his own. Such misconduct in the management of his case is in the nature of an admission by the plaintiff that the case which he is putting forward and attempting to support by the testimony of others as well as himself is not a true one. The jury may weigh the fact that a party has done anything in the conduct of his cause which an honest man would not have done in the support of a good case; and the jury may give the misconduct such weight as they think proper in passing upon the validity of the whole claim set up by that party, whether that claim be attempted to be sustained partly by his own testimony or wholly by the testimony of others.

The counsel then cited and commented on *Egan* v. *Bowker*, 5 Allen 449; *Moriarty* v. *Company*, L. R. 5 Q. B. 319; *Snell* v.

*Bray*, 56 Wis. 156, 162; *Chicago City Ry. Co.* v. *McMahon*, 103 Ill. 485; *State* v. *Staples*, 47 N. H. 113, 114, 118, 119; *Lyons* v. *Lawrence*, 12 Bradw. 531; *Hastings* v. *Stetson*, 130 Mass. 76; *Taylor* v. *Gilman*, 60 N. H. 506; *Murray* v. *Chase*, 134 Mass. 92; 1 Phil. Ev. 639; 2 Whart. Ev. 1265.

BLODGETT, J.   Sifting the wheat from the chaff, the material inquiry in this case is, whether evidence tending to prove that the purported indorsement of May 20, 1880, was fraudulently made by the plaintiff, could be weighed by the jury in considering the truthfulness of the indorsements purporting to have been made by him April 6, 1882.   In other words, the plaintiff having put in evidence part of a paper upon which the issue in the case directly turned, was it competent for the defendants to show that another part of the same paper was an utter fabrication?   This question sufficiently answers itself in the affirmative; but upon the facts appearing in the case no other answer is possible.   The plaintiff's action upon the note of his deceased father rested upon a new promise; and to establish the promise he relied upon certain indorsements in his own handwriting.   The defendants contended that these indorsements were fraudulently made by him for the purpose of renewing the note.   Upon this issue the plaintiff introduced the testimony of his brother to the effect that the indorsements were made in the presence and by the direction of the maker of the note.   Under these circumstances it was of course competent for the defendants to show that a prior indorsement made by the plaintiff upon the note was a fabrication, not only because it would obviously and properly tend to induce the jury to discredit the testimony of the witness, but because it would also tend to destroy the credit to which the paper would otherwise be entitled, and to impair the credibility of the plaintiff's entire case.   And to this effect, moreover, are *Knight* v. *Heath*, 23 N. H. 410–414, and *Corser* v. *Paul*, 41 N. H. 29.

In this view of the case it follows that the instruction requested by the plaintiff, limiting the jury in the consideration of his truthfulness to the evidence which he had given as a witness, was quite too narrow, and therefore was properly refused.   If the plaintiff had been a witness merely, the instruction apparently might have been properly given; but being a party also, his truthfulness was not only an element to be considered by the jury in weighing his individual evidence, but it properly extended to the consideration of his entire case.   There is no difference of degree, in law or in morals, between the responsibility attaching to him as a witness and as a party.   He testified by his acts as well as by his words; and if by means of either he gave false testimony, he cannot be heard to say that he is not responsible as a party for his falsity as a witness; nor can the law fix any limit to the effect of such falsity upon his case so long as it remains the province of

the jury to balance evidence, weigh probabilities, determine the credibility of witnesses, and draw inferences and conclusions from facts proved. To have limited the instruction according to the request would have been a usurpation of the prerogative of the jury as well as a misstatement of the law.

The complaint of the instruction as given, made at the argument, need only be adverted to in view of the numerous and uniform decisions in like cases. There certainly was no error in instructing the jury that they were at liberty to consider the plaintiff's truthfulness; and if he had cause to apprehend that other than legal evidence could be considered by them upon this point, he had the opportunity, and it was his duty as well, to move the court for proper additional instructions. Having failed to do this seasonably, it is now too late for him to remedy his error, and the possible effect of it upon the verdict cannot be considered.

*Exception overruled.*

CARPENTER, J., did not sit: the others concurred.